EDITH M. GREENWOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92091. Promulgated March 26, 1940.

*Ferdinand Tannenbaum, Esq.,* for the petitioner.
*C. C. Holmes, Esq.,* for the respondent.

OPINION.

TYSON: The income tax deficiency involved in this proceeding is in the amount of $1,582.65 for the calendar year 1935.

Petitioner assigns error in the respondent's disallowance of $15,750 of a claimed bad debt deduction of $17,750, based upon his determination that, when the petitioner exchanged bonds in the face amount of $71,000 for new and different bonds of the same company in the face amount of $53,250, upon a reorganization of the company in 1935 under section 77 (b) of the Bankruptcy Act, she sustained a capital loss

of $17,750, deductible only to the extent of $2,000 thereof, pursuant to the limitations of section 117 (d) of the Revenue Act of 1934.

The proceeding has been submitted upon a stipulation of facts, which is adopted as our findings of fact and is included herein by reference. Only such of those facts as are deemed necessary to the consideration of the issue involved will be set forth herein.

The petitioner is an individual, residing in New York City. Two years prior to 1935 and in a transaction entered into for profit, she purchased 71 first and refunding mortgage 7 percent gold bonds of the Woodruff Holding Corporation, due in 1946, at a cost of $71,000.

Prior to April 1935, the Woodruff Holding Corporation filed a petition in bankruptcy in the United States District Court for the Northern District of New York under the provisions of section 77 (b) of the Bankruptcy Act. Prior to April 1935 forms for consent to the plan of reorganization of that company, through recapitalization as subsequently approved by the court, were forwarded to the holders of its first and second mortgage bonds, its preferred and common stockholders, and to the unsecured creditors holding its notes.

In the above mentioned proceeding in bankruptcy and for reorganization of the Woodruff Holding Corporation, the court entered an order dated April 28, 1935, directing a recapitalization of that company, referred to in the order as the debtor. It was ordered that the debtor's first and refunding mortgage 7 percent gold bonds due in 1946 be called in by the debtor and exchanged for new 3 percent bonds due November 1, 1945, in 75 percent of the face amount of the old bonds; that the debtor's first and refunding mortgage 7 percent gold bonds due in 1946 and the mortgage indenture securing them (referred to in the order as the second mortgage indenture and bonds) be canceled without liability for unpaid arrears of interest; and that there be executed a new mortgage indenture securing the new bonds but omitting a sinking fund provision contained in the canceled indenture. The court further ordered that the debtor alter the terms of its first mortgage indenture so as to reduce the rate of interest therein provided to 5 percent and to extend the maturity date thereof to 1945; that the claims of unsecured creditors and the 8 percent preferred stock of the debtor be merged and canceled and that the debtor issue in exchange therefor its new 5 percent preferred stock in 50 percent of the face of such canceled claims and 50 percent of the par value of the old preferred stock; that the debtor issue one share of new $1 par value common stock in exchange for each two old shares of its common stock; and that each share of new common and new preferred stock should be entitled to one vote at the stockholders' meetings.

The terms of the court order of April 28, 1935, were carried out.

Under date of October 29, 1935, the president of the Woodruff Holding Corporation addressed a letter to the holders of first and refunding 7 percent gold bonds due in 1946, advising them that, pursuant to the reorganization plan approved by the court, the new securities were available and that in exchange for each $1,000 principal amount of old bonds with coupons attached the holders were to receive new 3 percent bonds in the principal amount of $750 due in 1945.

In November 1935 the petitioner surrendered to the Woodruff Holding Corporation 71 of its first and refunding mortgage 7 percent gold bonds in the face amount of $71,000, due in 1946, and received in exchange therefor first and refunding 3 percent mortgage bonds in the face amount of $53,250, due in 1945.

In 1935 the petitioner charged off $17,750 as a debt ascertained to be worthless in part.

On her return for 1935 petitioner reported a "net loss" of $17,750 in connection with the above described reorganization and exchange of bonds and claimed the full amount thereof as a deduction from gross income. In asserting the deficiency in controversy, the respondent determined that such exchange constituted a taxable transaction resulting in a capital loss deductible only to the extent of $2,000 thereof under section 117 (d) of the Revenue Act of 1934. He now contends that the transaction was an exchange of securities in a recapitalization constituting a statutory reorganization, on which no gain or loss whatsoever is recognized under the provisions of sections 112 (b) (3) and 112 (g) (1) (D) of the Revenue Act of 1934.[1]

The petitioner contends that as a bondholder she was a creditor of the Woodruff Holding Corporation in the amount of $71,000 prior to April 28, 1935, and that such company's indebtedness to her was reduced 25 percent by the court order entered on that date pursuant to the Bankruptcy Act, which specifically provides, in section 77 (b) thereof, that, upon the court's confirmation of a plan of reorganization of the debtor company, "the provisions of the plan and of the order of confirmation shall be binding upon (1) the debtor,

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) EXCHANGES SOLELY IN KIND.—

\*  \*  \*  \*  \*  \*  \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\*  \*  \*  \*  \*  \*  \*

(g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—

(1) The term "reorganization" means \* \* \* (D) a recapitalization, \* \* \*

(2) all stockholders thereof, * * * and (3) all creditors, secured or unsecured, * * *", including stockholders and creditors who have not,·as well as those who have, accepted the plan. Petitioner also contends that, being bound by the court order of April 28, 1935, she could never thereafter collect more than 75 percent of the Woodruff Holding Corporation's indebtedness of $71,000 to her; that consequently on that date such indebtedness became worthless in part, to the extent of $17,750; and that her subsequent exchange, in November 1935, of the old bonds for new bonds is immaterial in the instant proceeding because such action on her part merely preserved her right to receive, in the future, 75 percent of her original claim against that company. Petitioner further contends that, since she charged off that portion of a debt which became partially worthless in April 1935 and since the separate provisions of the revenue act for the deduction of bad debts and for losses sustained are mutually exclusive, she is entitled to the claimed deduction of $17,750 as a bad debt under section 23 (k) of the Revenue Act of 1934.[2]

While it has been held that under certain facts a bond represents a debt within the purview of the bad debt provision of the revenue acts and that upon the ascertainment of worthlessness thereof it may be deducted as a bad debt to the extent of the cost thereof, we can not, under the facts in the instant case, sustain petitioner's claim for a bad debt deduction.

We do not have here simply the ascertainment of partial worthlessness of a debt. The court order of April 28, 1935, did not merely relieve the Woodruff Holding Corporation of a portion of its debts, but instead scaled down that company's liabilities as a constituent part of a plan of reorganization of that company's capital structure, resulting in the petitioner's exchange of bonds. The partial worthlessness of petitioner's old bonds resulted from a reorganization, under section 112 (b) (3), supra, in which no gain or loss may be recognized, and, in our opinion, section 23 (k), supra, is not applicable.

There can be no doubt that the recapitalization of the Woodruff Holding Corporation constituted a reorganization under the provisions of section 112 (g) (1) (D), supra. Nor can there be any doubt that the ·petitioner's bonds constituted "securities" within the

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

* * * * * * *

(k) BAD DEBTS.—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

reorganization provisions. *Helvering* v. *Watts*, 296 U. S. 387. Here the plan of reorganization called for an exchange of stock as well as bonds thus providing a continuity of the proprietary interests in the company. We do not have here simply an exchange for bonds and cash, as was the case in *LeTulle* v. *Scofield*, 308 U. S. 415, wherein the Supreme Court held that, since there was no exchange of stock to provide for a continuity of the proprietary interests in the company there was no statutory reorganization and the one who received bonds and cash in the exchange there involved became, as to the bonds, a creditor of the issuing corporation rather than the recipient of "securities" within the reorganization provisions.

The instant case is distinguished from *Henry R. Huntting*, 32 B. T. A. 495, in that there no reorganization occurred in the year in which partial worthlessness of bonds was ascertained by the owner thereof.

Since the petitioner during the taxable year exchanged her old bonds for new bonds pursuant to a statutory reorganization under a plan of reorganization, there is no recognized gain or loss in connection with that transaction, and she is not entitled to deduct the difference between the face amounts of her old and new bonds as a debt ascertained to be partially worthless during 1935. *Rockford Dairy, Inc.*, 26 B. T. A. 501. Cf. *Frederick L. Leckie*, 37 B. T. A. 252; and *Commissioner* v. *Kitselman*, 89 Fed. (2d) 458, reversing 33 B. T. A. 494; certiorari denied, 302 U. S. 709.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

OPPER, dissenting: It seems to me the Board's opinion results from an inadmissible extension of the scope of section 112. That section begins:

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, * * * shall be recognized, except * * *.

There follow successive provisions, each beginning "No gain or loss shall be recognized", which define the breadth of the exceptions. One such provision, section 112 (b) (3), is presumably that on which the majority opinion rests.

It seems inescapable, however, that section 112 deals exclusively with sales or exchanges, both as to its statement of the general rule and with respect to the negations thereof contained in the exceptions. If petitioner were relying upon a sale or exchange as the justification for her claim, resort to the exceptions would be both necessary and

appropriate. But petitioner's position here is affected neither one way nor the other by the sale or exchange concept, because her assertion is not that a debt owed to her has been sold, but that it became partially uncollectible in the tax year. Her situation is no different than if the securities had remained at all times in her safe deposit box without change. If, under these circumstances, she could demonstrate that the debts they represent have become partially worthless, the deduction is proper to the extent of the charge-off. Revenue Act of 1934, sec. 23 (k). It is not necessary to resort to a sale or exchange to obtain this benefit. *Ross* v. *Commissioner*, 72 Fed. (2d) 122; *Commonwealth Commercial State Bank* v. *Lucas*, 41 Fed. (2d) 111. The retort that there was no sale or exchange, or that if there was one she is not entitled to rely on it under section 112 (b) (3), thus falls wide of the mark. If petitioner would be in no better position because of section 112 (a) she can hardly be in a worse one because of 112 (b) (3).

It may be urged that there was an exchange here, later in the year, even though it lacks tax significance under petitioner's claim; and hence that section 112 operates. But what would be the result if she had refrained from consummating the exchange of the physical securities? Would it then be said that there was an exchange, notwithstanding there was actually none; or that the mere postponement to the following year of the physical exchange would be sufficient to give the taxpayer the benefit of the deduction? See *Henry R. Huntting*, 32 B. T. A. 495. If the latter, the only effect of the Board's decision is to force creditors to withhold their cooperation in a reorganization, so as to secure the benefit of the tax deduction. That Congress intended a result so contrary to public policy is difficult to believe.

ARUNDELL, MURDOCK, MELLOTT, and HARRON agree with this dissent.